**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 05-cv-00162-REB-MJW

AMICA MUTUAL INSURANCE COMPANY, a Rhode Island corporation,

    Plaintiff,

v.

BARBARA FARHAR,

    Defendant.

## ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT

**Blackburn, J.**

The matters before me are (1) **Plaintiff's Motion for Summary Judgment** [#49], filed December 9, 2005; and (2) **Defendant's Amended Motion for Partial Summary Judgment on the Parties' Claims for Declaratory Relief** [#52], filed December 15, 2005. Concluding that genuine issues of material fact preclude summary judgment on the issues raised by the motions, I deny them.[1]

### I. JURISDICTION

I have jurisdiction over this matter pursuant to 28 U.S.C. § 1332 (diversity of citizenship).

---

[1] The issues raised by and inherent to the cross-motions for summary judgment are fully briefed, obviating the necessity for evidentiary hearing or oral argument. Thus, the motions stand submitted on the papers. *Cf.* **FED. R. CIV. P. 56(c)** and **(d)**. *Geear v. Boulder Cmty. Hosp.*, 844 F.2d 764, 766 (10th Cir.1988) (holding that the hearing requirement for summary judgment motions is satisfied by court's review of documents submitted by parties).

## II.  STANDARD OF REVIEW

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  **FED.R.CIV.P.** 56(c); **Celotex Corp. v. Catrett**, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  A dispute is "genuine" if the issue could be resolved in favor of either party. **Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.**, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); **Farthing v. City of Shawnee**, 39 F.3d 1131, 1135 (10th Cir. 1994).  A fact is "material" if it might reasonably affect the outcome of the case.  **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); **Farthing**, 39 F.3d at 1134.

The party who does not have the burden of proof at trial must show the absence of a genuine fact issue.  **Concrete Works, Inc. v. City & County of Denver**, 36 F.3d 1513, 1517 (10th Cir. 1994), **cert. denied**, 115 S.Ct. 1315 (1995).  By contrast, a movant who bears the burden of proof must submit evidence to establish every essential element of its claim or affirmative defense.  **See In re Ribozyme Pharmaceuticals, Inc. Securities Litigation**, 209 F.Supp.2d 1106, 1111 (D. Colo. 2002).  In either case, once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper.  **Concrete Works**, 36 F.3d at 1518.[2]

---

[2] However, the fact that the parties have filed cross-motions for summary judgment does not necessarily indicate that summary judgment is proper.  **See Atlantic Richfield Co. v. Farm Credit Bank of Wichita**, 226 F.3d 1138, 1148 (10th Cir. 2000); **James Barlow Family Ltd. Partnership v. David M. Munson, Inc.**, 132 F.3d 1316, 1319 (10th Cir. 1997); **see also Buell Cabinet Co. v. Sudduth**, 608 F.2d 431, 433 (10th Cir. 1979) ("Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another.").

All the evidence must be viewed in the light most favorable to the party opposing the motion. ***Simms v. Oklahoma ex rel Department of Mental Health and Substance Abuse Services***, 165 F.3d 1321, 1326 (10th Cir.), ***cert. denied***, 120 S.Ct. 53 (1999). However, conclusory statements and testimony based merely on conjecture or subjective belief are not competent summary judgment evidence. ***Rice v. United States***, 166 F.3d 1088, 1092 (10th Cir.), ***cert. denied***, 120 S.Ct. 334 (1999); ***Nutting v. RAM Southwest, Inc.***, 106 F.Supp.2d 1121, 1123 (D. Colo. 2000).

### III.  ANALYSIS

Defendant Barbara Farhar ("Farhar") purchased automobile insurance from plaintiff Amica Mutual Insurance Company ("Amica") in April, 1996. Farhar elected to purchase, for an additional premium, extended personal injury protection ("PIP") coverage for medical and work loss expenses above the mandatory $50,000 cap then imposed by Colorado law. (***See*** Plf. Motion App., Exh. 3.) The policy capped extended PIP coverage at $200,000. (***See id.***, Exhs. 3 & 4.)

Farhar renewed the policy from year to year. When the policy became due for renewal in 1999, Amica mailed Farhar a renewal notice, which stated, in pertinent part,

> The attached Renewal Notice provides the information we will use to renew your policy. You will also find an Information Digest which describes coverages, rate classifications, discounts and available options. Please review this material. If you are satisfied with your present coverage and the accuracy of your policy information, you need do nothing and your policy will be renewed without change.

(***Id.***, Exh. 6.) Under a section titled "No-Fault Insurance," the Information Digest

referenced in the renewal notice explained that "**Added Personal Injury Protection Coverage** increases the total amount available to $200,000 on an optional basis for an additional premium." (*Id*., Exh. 7.)  Farhar did not request any changes to her policy, which was renewed effective April 30, 1999.

The renewal policy included a new endorsement, PP 05 61 01 99, which, according to Amica, was intended to change the policy only to extend PIP benefits to "any family member," rather than solely to a "resident spouse."  However, under the description of the "Maximum Limit of Liability for the Total of All Basic and Added Personal Injury Protection Benefits," the new endorsement also showed a dollar sign with a blank beside it.  In other words, the $200,000 limit on extended PIP coverage did not appear on the face of the endorsement.  Farhar was subsequently injured in a car accident and now claims that the failure to specify a maximum coverage limit means that the renewal policy was one for unlimited benefits.  Amica, by contrast, maintains that the failure to indicate a ceiling on coverage was merely a scrivener's error and that the renewal policy should be construed to reflect that plaintiff's PIP coverage was limited to $200,000.

Having reviewed the arguments, authorities, and evidence presented by the parties, I find that there exist genuine issues of material fact that are not appropriate for summary resolution.  By way of example, but not limitation, the following factual disputes prevent me from granting either party's motion.

Amica premises its arguments regarding scrivener's error principally on the testimony of Gregory Smolan.  However, Smolan was not responsible for approving the

allegedly faulty endorsement at issue in this case, and the individual who was, Bruce Thomas, has not been located, much less deposed. Although Smolan undertook to reconstruct how the dollar figure came to be eliminated from the 1999 policy endorsement, he cannot testify as a lay witness to any opinion formed as a result of such investigation, as any such opinion would be based on hearsay or otherwise not of his personal knowledge. Nor has Amica attempted to qualify Smolan as an expert in regard to the process of amending an Amica insurance policy such that his testimony might be admissible. Farhar's objection thus appears to be well-taken, and without Smolan's testimony, Amica is not entitled to summary judgment based on a claim of mutual mistake.

Nevertheless, I do not believe that Farhar is entitled to summary judgment either. Although Farhar claims that there was no mutual mistake because she intended to purchase a policy that would cover all her expenses related to any one accident, I find the evidence supporting this argument insufficient to warrant summary judgment in her favor. Farhar's testimony relates to her initial application for coverage, at which time the express language of the policy clearly showed that she was mistaken in her assumptions regarding coverage. Nothing about Farhar's actions at the time the policy was renewed in1999 suggests that she believed the policy had changed in any appreciable way. Farhar did not request any changes to the policy, apparently had no conversations with anyone at Amica concerning the renewal, and continued to pay the

same premium for extended PIP as she had previously.[3]  Given these facts, I cannot say as a matter of law that mutual mistake, properly supported, is not a viable rubric under which to analyze the issues in this case.[4]

Even apart from the question of mutual mistake, I find summary judgment for Farhar inappropriate because to find in favor of Farhar, I would have to assume, as she implicitly does, that Thomas could have unilaterally approved a change in the extended PIP cap.  There is no evidence to confirm or disprove that assumption, without which I am unwilling to conclude, implicitly or otherwise, that Thomas would have had the authority to single-handedly affect such a drastic change in Amica's past practice, not only with respect to Farhar's policy, but with respect to all policies Amica issued to Colorado insureds from 1999 through 2004.

## IV.  CONCLUSION

The pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there are genuine issues as to material facts. **FED. R. CIV. P.  56(c**). Genuine issues of material fact preclude summary judgment for either party in this matter. *Id*. Accordingly, both parties' motions for summary judgment must be denied.  The bench trial currently scheduled to commence

---

[3]  Amica argues that Farhar could not have possibly relied on the policy's failure to include a coverage limit because she did not receive a copy of the policy containing the blank endorsement until after she paid her renewal premium.  This fact would be powerful proof going to the issue of mutual mistake, but the summary judgment record contains nothing other than counsel's arguments to support that conclusion.

[4]  Moreover, although Farhar attempts to confine my review to the four corners of her insurance policy, it is clear that the parol evidence rule does not apply where mutual mistake prevented the contract from expressing the parties' true intentions.  *In re Invenux, Inc.*, 298 B.R. 442, 448 (Bankr. D. Colo. 2003); *Light v. Rogers*, 242 P.2d 234, 237 (Colo. 1952).

on Wednesday, February 8, 2006, will proceed as scheduled, and all previously imposed pretrial deadlines remain in effect.

**THEREFORE, IT IS ORDERED** as follows:

1. That **Plaintiff's Motion for Summary Judgment** [#49], filed December 9, 2005, is **DENIED**; and

2. That **Defendant's Amended Motion for Partial Summary Judgment on the Parties' Claims for Declaratory Relief** [#52], filed December 15, 2005, is **DENIED**.

Dated January 24, 2006, at Denver, Colorado.

**BY THE COURT:**

**s/ Robert E. Blackburn**
**Robert E. Blackburn**
**United States District Judge**